UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| FALCON RIVERA, JR. | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO._____ |
| | § | |
| DANIEL CRUZ, AND CITY OF | § | |
| MCALLEN | § | JURY TRIAL DEMNDED |
| | § | |
| Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Falcon Rivera, Jr. (hereinafter "Rivera"), Plaintiff in the above styled and numbered cause complaining of Daniel Cruz (hereinafter "Cruz") and the City of McAllen and for causes of action would show as follows:

### I. Introduction

1. This is a suit for negligent training and supervision under the Monell Doctrine and the Texas Tort Claims Act, and for violation of 42. U.S.C. Section 1983 brought by Falcon Rivera, Jr. He was shot by McAllen police officer Daniel Cruz under circumstances where the shooting constituted the use of excessive force. At the time of the shooting Mr. Rivera was hand cuffed and running away form Officer Cruz. Cruz has admitted that Rivera posed no immediate threat to either himself or any other citizen.  He fired his gun five times and struck Rivera in the foot while Cruz has admitted he could not see clearly and was bleeding from the nose at the time he discharged his weapon.  Cruz's actions violated and were inconsistent with established City of McAllen police procedures and as such were unlawful. The City of McAllen failed to adequately supervise and train Cruz in the use of deadly force. The facts of this case are set out in paragraphs 11-20

1

hereinunder. It is important to understand that prior to filing suit in this Court the Plaintiff exercised his rights under Tex. R. Civ. P. 202. He filed a proceeding that allowed him to conduct pre-suit discovery to determine the facts of the contemplated lawsuit. The factual allegations contained herein as to how the shooting occurred and the alleged justification for the use of deadly force all come directly from Defendant Cruz.

## II. Parties

2. Plaintiff Falcon Rivera, Jr. (Rivera) is a natural person, residing in Hidalgo County, Texas at 5217 N. 25th St., McAllen, Texas 78504.

3. Defendant Daniel Cruz is a natural person residing in Hidalgo County, Texas at 2733 West Toucan Avenue, McAllen, Texas 78504. Cruz is sued in his individual and official capacities and at all times relevant to this complaint he was acting under color of state law. He may be served with process by serving him with citation and copy of this complaint at 2733 West Toucan Avenue, McAllen, Texas 78504. This Court therefore has personal jurisdiction over Defendant Cruz.

4. Defendant City of McAllen is a political subdivision, formed and operating under the laws of the State of Texas. It may be served by serving Issac Tawil its City Attorney at 1300 Houston Avenue, McAllen, Texas 78501 with citation and a copy of this complaint. This Court therefore has personal jurisdiction over Defendant City of McAllen.

5. The City of McAllen is self-insured.

6. Alternatively, the City of McAllen is insured through a risk pool, TML.

7. Alternatively, the City of McAllen is insured by a third-party insurance company.

## III.  Venue

8. Venue is proper in the McAllen Division of the U.S. Southern District of Texas because all of the acts that give rise to the complaint occurred in Hidalgo County, Texas.

### IV.     Jurisdiction

9.       This is a suit under 42 U.S.C. 1983 for violation of Rivera's constitutional rights as well as the Monell Doctrine for failure to adequately train and supervise. As such the constitutional claim falls within this Court's federal question jurisdiction and as such this Court has subject matter jurisdiction over this lawsuit.

### V.  Notice Under Tex. Civ. Prac. & Rem. Code §101.101

10.      With respect to claims under the Tort Claims Act, Plaintiff complied with pre-suit notice requirements as set forth in Tex. Civ. Prac. & Rem. Code § 101.101 as to Defendant, City of McAllen, Texas. In the alternative, Plaintiff states that any alleged defects in the notice given to the City of McAllen, Texas, is cured by the fact that said notice constituted actual notice of Plaintiff's claims.

### VI.  Facts

11.      Plaintiff is retired from the United States Marine Corps. During his years of active duty Rivera saw combat and as a result returned to civilian life suffering from post-traumatic stress syndrome. As a result of his condition Rivera was and is under the care of a psychiatrist and is treated with medication for his condition. On January 14, 2020, the McAllen police department responded to a call at Rivera's residence. The call was from an unknown third party indicating there was a suicidal person at Rivera's residence.

12.      On the day in question Officer Cruz, acting in his official capacity as a McAllen police officer was working the second shift and had just started his shift at 6:00 a.m. When he arrived shortly after 8:11 a.m., he was the third officer to arrive on the scene. Rivera was already in custody and Cruz participated in the search of the home. The search uncovered a firearm that Rivera had in his possession at the time the police arrived. Cruz testified in his pre-suit deposition

that there was no indication the gun had been fired and that when he arrived Rivera was still not in custody.  Cruz was not involved in taking Rivera into custody but shortly thereafter the decision was made to take Rivera to the South Texas Health Systems Emergency Room.  The officer in charge at the scene instructed Cruz to transport Rivera to the South Texas Health Systems ER (hereinafter "South Texas ER"). Rivera was already secured in Cruz's vehicle and was restrained, meaning his hands were cuffed but not his feet.

13. Cruz indicated that Rivera was calm, he responded to commands by obeying directions, but was not speaking.  He appeared to pose no threat to himself or anyone else. Cruz understood that Rivera had expressed a willingness to die but knew nothing else other than based on the certificates and diplomas he had observed inside the residence that Rivera was a Marine Corp veteran. Cruz had also observed that Rivera walked with a limp, the term he used to describe an odd maneuver Rivera did with his right foot.  Cruz proceeded to transport Rivera to the ER to insure had no life-threatening substances were in his system and for clearance so he could be booked into another medical facility.

14. Upon arrival at South Texas ER Cruz escorted Rivera into the emergency room without incident.  At some point while at the ER Cruz adjusted Rivera's handcuffs so his hands were in front of him and not behind in order to assist the doctors in their medical evaluation. However, upon departing the facility Cruz neglected to return Rivera's handcuffs to a position behind his body.  The McAllen police department had standard operating procedures for transporting persons to and from medical facilities and those procedures called for the officer to simply be certain the individual being transported did not pose a threat to himself or others.  Consistent with procedure, Crus observed and verified that Rivera was not a threat to himself or others.

15.     Cruz was with Rivera for approximately 2-3 hours before leaving the ER. The doctors at the ER made the decision that Rivera needed to be transported to the South Texas Behavioral Center and Cruz was again designated to transport Rivera. Rivera was placed in the police car wearing a medical gown, his pants and socks, no shoes. He was cuffed with his hands in front, not behind. For the entire ride from the South Texas ER to the Behavioral Center Rivera was cooperative and non-aggressive, never tried to hurt himself or Cruz and rode in silence to the behavioral center. Upon arrival Cruz indicated the circular drive in front of the center was occupied by an ambulance, so he parked in the main parking lot. Cruz did not observe any hospital employees present and knew that he needed to take Rivera into the facility through the front entrance.

16.     Upon getting parked Cruz removed Rivera's paperwork and some personal items from the front seat and then opened the rear door to allow Rivera to exit. Once Rivera had exited the vehicle Cruz allowed him to walk in front as Cruz had both hands full and they proceeded toward the Behavioral Center front entrance with Rivera's hands cuffed in front of him. Cruz indicated at some point Rivera actually stopped, whether it was from the walking limp Cruz had observed earlier or Rivera may have stepped on something and he was only wearing socks. Cruz did not see him stop and actually bumped into Rivera as he came up behind him. When Cruz bumped into him Rivera actually turned to face Cruz and then elbowed Cruz in the face. Cruz fell to the ground and Rivera began running across an open field toward a convenience store. He was still handcuffed, wearing only socks, pants and a medical gown.

17.     Cruz was bleeding from the nose and a cut on his face and began to chase Rivera. Rivera was now running northwest toward a convenience store over a half-mile away. Cruz did not attempt to call in for back up. Once Cruz cleared the vehicles in the parking lot, he saw Rivera

running in the open field and determined he could not catch him. Cruz described himself as incapacitated, and his eyes had the sensation of being tear gassed. However, he still did not call in back up. Instead, Cruz determined that his only option was to discharge his firearm at Rivera. Cruz conceded that he did not think to call in back up. Cruz stated that he fired before Rivera could reach the convenience store, grab a vehicle, and escape. This is a salient point. Here is a man who is hand cuffed, has no shoes, wearing pants and a medical gown who Cruz admitted posed no threat to anyone, no longer posed a threat to Cruz, and based on Cruz's testimony was out of range. In 20 years of service Cruz had never fired his weapon in the line of duty. He testified that Rivera was about 35 yards away when he started firing and that police officers train at 25 yards. His weapon is a Beretta 96FS that has a killing range of up to 2000 yards.

18.     Cruz fired five times, he struck Rivera in the foot causing severe damage to the foot. Cruz testified when he fired that no one was in danger, there was no threat to Cruz, a third party or Rivera. In his own words he fired to apprehend Rivera. Texas Penal Code §§ 9.31 and 9.32 set out when deadly force is acceptable. It must be used either to defend one's self or in defense of a third party. Cruz testified in his TRCP 202 deposition that neither situation existed. He fired because he saw it as the only option to apprehend Rivera, a man who was unarmed, hand cuffed, and half nude. Cruz agreed, under oath, that he had exercised the use of deadly force on a man who was simply running away and had his back to him.

19.     Cruz's actions are exacerbated by the fact that he also admitted to being virtually incapacitated. He was bleeding from the nose and face, his eyes had teared up as if he had been gassed, and he could not even aim properly. He admitted Rivera was out of range yet he fired five times. Cruz even admitted he was aiming for the left shoulder or higher, shots designed to kill. He ended up hitting Rivera in the foot. His testimony indicated he believed shooting Rivera was

his only option. His actions demonstrate not only unlawful conduct on Cruz's part in how he chose to use deadly force, but negligence in training and supervision on the part of the City of McAllen Police Department. Cruz, a twenty-year veteran, was not even familiar with the rudimentary rules for the use of deadly force. He violated not only the Texas Penal Code, but internal police policies and procedures. The City of McAllen put a police officer on the street who had no conception of the law and policy behind the use of deadly force. That was a complete failure on the part of the City of McAllen to train and to update training.

20. Mr. Rivera's foot took approximately 5 months to heal but never completely healed. While Mr. Rivera was in the THHS facility in Harlingen, he had to be transported to the emergency room by ambulance on two separate occasions due to the severe infection on his foot. Once the wound had healed enough to try and walk Mr. Rivera had to undergo three months of physical therapy. Mr. Rivera continues to suffer chronic pain and soreness from having to walk unevenly to compensate for his injured foot. He is currently walking without the assistance of a walker or cane, but he cannot put full pressure on his foot. His uneven walk has forced Mr. Rivera to apply excessive pressure on his lower back and hip which has caused further pain. Mr. Rivera gets exhausted very quickly due his uneven step and he can no longer exercise as he usually would before the incident. Because of the deformity caused to his foot, Mr. Rivera has difficulty finding shoes that allow him to walk properly. The Veterans Administration only covered part of Mr. Rivera's care and he now owes hospital bills for the uncovered charges.

### VII. First Cause of Action: Deprivation of Rivera's 4th Amendment rights in Violation of 42 U.S.C. §1983

Plaintiff incorporates paragraphs 1-20 as if fully set out herein under and in addition would pleads as follows:

21. At all times relevant to this complaint Cruz was a police officer, employed by the City of McAllen, and operating under the color of state law. 42 USC §1983 provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

The courts have recognized that the excessive use of force, in this case deadly force, constitutes a violation of a person's 4th Amendment rights as an unlawful seizure.

22. It is undisputed that:

a. Rivera was unarmed;

b. That Rivera's hands were restrained;

c. That Cruz was not acting in self-defense when he fired on Rivera;

d. That Cruz was not defending any third person who was being threatened in any way by Rivera;

e. That the use of Cruz's firearm was the use of deadly force;

f. That Cruz's weapon could kill at a distance of 2000 yards;

g. That Cruz in fact struck Rivera causing permanent injury to his foot.

Every element of a claim for violation of a constitutional right exists and Cruz enjoys no immunity, absolute or qualified, under 42 USC §1983.

### VIII. Second Cause of Action: Monell Liability by the City of McAllen

Plaintiff incorporates paragraphs 1-20 as if fully set out herein under and in addition would plead as follows:

23. On or about January 14, 2020, as evidenced by the conduct of Cruz in this matter, and for some time prior and since then until the present, Defendant, City of McAllen, Texas, failed to properly train, assign, supervise and guide its police officers, in regard to the legal use of deadly force, and appropriate methods for handling unarmed, restrained individuals who posed no threat to either an officer , a third party, or himself.

24. It is clear based on Cruz's own testimony that he:

a. Had no real knowledge or understanding of McAllen police department polices and procedures;

b. He had no sense or understanding of when deadly force was appropriate;

c. He fired his weapon under circumstance where he could not see or aim and obviously had no sense of whether that was appropriate;

d. Rivera was restrained, shoeless and half dressed, moving toward a convenience store a half mile away.  Simply calling back up to the convenience store would have prevented Rivera form escaping and would not have involved the improper use of deadly force.

Cruz demonstrated a complete lack of knowledge of police procedures regarding prisoner transportation, use of his firearm, use of deadly force and procedures for calling in assistance. Cruz is an officer with 20 years  in-service time with the McAllen police department and it is clear form his conduct as outlined above that the City of McAllen has completely failed in its obligation to put trained police officers on the street.

25. Defendant, City of McAllen, Texas' policies referenced above were the moving force behind the violation of Falcon Rivera, Jr.'s rights guaranteed by the United States Constitution. As a direct and proximate result of Defendant, City of McAllen , as described above, Falcon Rivera, Jr. suffered physical injuries, severe emotional distress, pain and suffering, deprivations of his civil

rights and invasion of his bodily integrity. Plaintiff's injuries are such that he will require additional medical care in the foreseeable future.

## X. Damages

26. Defendants' negligent conduct and excessive force proximately caused thefollowing personal injuries:

A. The physical pain and suffering sustained by Plaintiff, on the date of injury to the time of trial;

B. Future physical pain and suffering reasonably anticipated to be sustained by Plaintiff, in the future;

C. Mental anguish and suffering sustained by Plaintiff from date of injury to the time of trial;

D. Mental anguish and suffering which are reasonably anticipated to be suffered by Plaintiff Rivera in the future;

E. Reasonable and necessary medical expenses incurred by Plaintiff, in the past and future;

F. Plaintiff seeks actual and compensatory damages;

G. Attorney's fees pursuant to 42 USC § 1988, litigation/appellate expenses,costs, and pre- and post-judgment interest as provided by law;

H. Punitive damages from Defendant Cruz and City of McAllen; and

I. Such other and further relief as the Court deems just and proper.

## XI. Jury Demand

27. Plaintiff demands a jury trial in this matter.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final trial hereof Plaintiff recover from Defendants, a sum in excess of the minimum jurisdictional limits of the Court, costs of Court, pre-judgment and post-judgment interest at the legal rate, and for

any and all further relief, both general and special, legal and equitable to which Plaintiff may be justly entitled to receive.

>Respectfully submitted,
>
>By: /s/ Mark A. Weitz
>Texas Bar No. 21116500
>WEITZ MORGAN PLLC
>100 Congress Ave., Suite 2000
>Austin, Texas 78701
>Phone: (512) 370-5211
>Fax: (512) 852-4446
>Email: mweitz@weitzmorgan.com
>
>By: /s/Cynthia Contreras Gutierrez
>CYNTHIA CONTRERAS GUTIERRZ
>Texas Bar No. 08640550
>S.D. Tex. Bar No. 13321
>CONTRERAS GUTIERREZ
>AND ASSOCIATES
>1302 S. 10th Ave.
>Edinburg, Texas 78539
>Phone: (956) 683-0057
>Fax: (956) 683-0059
>Email: cynthia@ccglaw.net